Counsel, before you begin, we received a letter from Mr. Poulain saying that he had not been in contact with his attorney for over a year, despite many letters that had been written. Have you been in communication with Mr. Poulain? Yes. I received a copy of the letter that was sent to the court through the e-filing system, and apparently he's been moved. I'm not aware that we have received letters from him. He apparently has moved to a prison now in Minnesota, I believe. So I did, after I saw that letter, I did contact him, wrote him a letter there, letting him know about the state of the world and the status of his case. He said that a year went by without any contact between you and him. Is that correct? I think the last time we contacted him was after the Red Flag Brief was submitted, and I did not contact him to let him know initially about the setting of this oral argument. The partner that I'm working with on this case, I'm not sure if he did either. So that may be true, that the last time we contacted him was when we sent him a copy of the Red Flag Brief. So you know, we appreciate your taking the case, Poulain, very much, but we do expect Poulain Counsel to stay in contact with that finance and keep them apprised of what's happening with the case. So just so you know, we expect for that to happen. Otherwise, we probably would not stop making pro bono appointments. Yes. You'd just be advised. Yes, I apologize for that. When we have faced the court, my name is Sarah Kobach. I represent the attorney Christopher Poulain in this appeal. I'd like to reserve three minutes of my time for rebuttal. This is a 1983 case arising from a surgery that was performed on Mr. Poulain when he was in a prison in the state's custody. In his claims, Mr. Poulain alleges that the state deliberately wasn't defined to his serious medical needs. When the state skipped routine diagnostic tests before subjecting him to a surgery. And the sole issue on appeal is the timeliness of Mr. Poulain's claims and whether or not there's any issues of material fact as to when Mr. Poulain discovered that he had been injured by the state. Now the district court took the view that Mr. Poulain discovered his injury in February of 2007, shortly after the surgery when Mr. Poulain first was told that the growth was benign and that he did not have cancer. And making that conclusion, the district court expressly recognized that the record, the summary judgment record showed that Mr. Poulain did not know that a biopsy would have been available until shortly before he had filed his claims. And that's on ES 13 where the court says expressly that Poulain did not discover until the eve of his lawsuit that a biopsy may have shown that the surgery was unnecessary. The problem with the district court's reasoning is that it fails to appreciate the nature of Mr. Poulain's claim and it failed to give all the reason, view the evidence and give all reasonable inferences in a way most favorable to Mr. Poulain as is required on the summary judgment. The answer in this case is that Mr. Poulain was subjected to an unnecessary surgery. The district court viewed the surgery as unnecessary because of the fact that it turned out that Mr. Poulain, the growth was not cancerous or was not benign. And in fact, whether the surgery is necessary is that there were diagnostic tests that could have been performed and that could have discovered that without subjecting him to the surgery. At the point that he had the surgery and after the surgery when the district court found that the claim accrued, Mr. Poulain understood that the surgery was medically necessary and that a biopsy was not available because of the risk of the cancer spreading. He reasonably relied on that explanation of why he had to proceed immediately to the surgery without having any type of diagnostic test performed. So the fact that he learned that the surgery turned out to be not cancer, at that point in time he still did not have any information as to the fact that the surgery, in fact, was unnecessary because there could have been ways to avoid doing a surgery and discover the fact that he did not have cancer without subjecting him to the surgery. And that's a basic rule that a claim does not accrue until the plaintiff knows of the injury and the cause of the injury. And that rule operates to delay the start date of statute of limitations because the plaintiff can't file a claim until the plaintiff knows of the injury and the cause of the injury. Here, Mr. Poulain, again, did not know that the surgery was unnecessary until he learned there were diagnostic tests that could have been done to avoid the surgery, not subjecting him to that. A good example of this is the Twin Rivers case that we cited in our brief where there was a prisoner who had a severe infection. He was subjected to baths in filthy conditions, and the court found that the time that he discovered that he had an injury was when he was aware of the filthy conditions because he knew at that point that there would be no medical reason why he would be in those conditions. In this case, Mr. Poulain, again, had no information until the nurse told him in 2009 that the biopsy was probably not done in order to save costs rather than for any type of medical reason. And I will escort you to the questions. I'll see if we can confirm. Thank you, counsel. We have pleased the court. Good morning. Jonathan Schultz on behalf of the Oregon Department of Corrections Defendants. This court should affirm the district court's judgment for two reasons. First, plaintiff's claim is untimely because he filed suit well over two years after the claim accrued. And second, plaintiff has not shown and has not met the extraordinarily high bar to show that his untimely claim or the untimeliness of the claim should be excused by equitable tolling. Starting with the claim accrual rule, I think there is agreement between plaintiffs and defendants that a claim accrues when the plaintiff knows or reasonably should know of the injury, but to be sure there is disagreement about what injury means. And what this court has instructed and what the United States Supreme Court has held is that the injury, at least in the context of a medical claim or a deliberate indifference claim, is not the intangible harm to constitutional rights but the physical injury. And so claim accrual does not wait until a plaintiff is aware that the person who caused the injury engaged in some conduct that is legally blameworthy or negligent or, if the theory is deliberate indifference, that the defendant acted with deliberate indifference. And here, once in February 21, 2007, a plaintiff learned that the testicle that had been extracted was healthy. He learned that it was not benign. And at that point, a plaintiff was on notice that he had been injured, he had been harmed, and certainly he knew that it was defendants who had brought about the harm. There's no question as to who brought about the harm or causation, as there is in some cases. And at that point, then, a plaintiff had a duty to inquire, and that's the duty that is put on all tort claimants, to inquire within a reasonable amount of time whether to bring suit. A plaintiff in this case did not do that. And plaintiff essentially points to a period in time where he found some evidence that, under his theory and his belief, is evidence of fault. But that is not when the claim accrues. The claim accrues before that time when the plaintiff is physically injured. Two Rivers does not. It's not to the contrary. In fact, in Two Rivers, this Court noted in footnote 2 that the parties did not even dispute the claim recruital in that case. And the Court certainly did not consult the issue or decide that a claim should accrue when a plaintiff is, knows, or should know of the legal wrong. And certainly, being placed in bleach baths with infested fecal matter and other patients' caps, certainly that was the physical and concrete injury underlying that case. And the Court did not certainly decide that it was a legal harm or a plaintiff's awareness of the legal harm that gave rise to his claim. Other than that, on equitable tolling, equitable tolling does not save plaintiff's untimely claim. But that does show both that he was pursuing his rights diligently and that some external, extraordinary circumstances stood in the way of filing suit. Certainly, the diligence aspect is not met. You know, filing an initial grievance and then waiting, and then receiving a prompt response a few weeks later and then waiting over a year before even appealing that grievance. And as to external circumstances, the plaintiff has not pointed to any external impediment that would prevent him from filing suit. So, unless the Court has any questions, for those reasons, defendants ask that the Court refer him to District Court. Thank you. Thank you. Counsel, rebuttal. Thank you. I'll just make a couple points in rebuttal. The first is on the issue of the inquiry notice and when the plaintiff had a duty to investigate his claim. And the defendant has a position in the District Court agreed that that notice existed at the time that he learned that the surgery was necessary. The problem with that argument is that at that point in time, Mr. Flan did not know that he had been injured or the cause of the injury. Because if the surgery was medically necessary, because let's say, for example, that there were no diagnostic tests available that could have been done, and the only option was surgery, but enough success showed that that's what he understood, then he was not harmed by the fact that the surgery turned out to be unnecessary in the sense of medically unnecessary that he didn't have cancer. At that point in time, the surgery still was necessary because that was the only way to address the growth. The point in time where he learned... Counsel, why, if I may interject a question, why at the point he finds out that the growth isn't cancerous, doesn't he have the duty to make inquiry that would have revealed whatever he wanted to know about the test? No, and the reason why is he had inquired about the test before the surgery was done, and he was told that a biopsy was not an option in his case because of the risk of the cancer spreading. And he was aware that it could be that it will turn out not to be cancer. The record is clear now. We don't dispute that fact. But he went into the surgery, and even after he learned that he didn't have cancer, the only information he had was that a biopsy was not available. So he had no reason to inquire because it wasn't until he later learned that, no, in fact, a biopsy may have been available, and there may have been, and likely were, non-medical reasons why a biopsy was not ordered. At that point in time is when he learned that he had the duty to inquire about the necessity of the surgery because only then did he learn about the availability of other ways to address the problem that he had. Thank you. Unless the board has any further questions, we ask the court to reverse and re-enter the proceedings. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The final piece on our calendar for arguing today.
judges: Gould, Rawlinson, Burns